## JONES v. ROCKY CLIFF COAL MINING CO.

1. A. and wife owned certain property. They executed a warranty deed in blank as to grantee and delivered it to B., the president of a corporation C., who kept it unchanged for six years, and then had C.'s name written in as grantee and recorded. In the meantime D., who claimed to be the intended grantee in the original deed, secured and recorded a quitclaim deed from A. and wife conveying to her said property for the nominal consideration of $1, while the original deed was still in the possession of B., with no grantee named. B. was acting both for the corporation and for D. in the transaction, and neither C. nor D. knew of the other's claim. **Held** that, at the time of the execution and delivery of the quitclaim deed, the warranty deed was ineffective as a conveyance, and the title, being in A. and wife, passed by the quitclaim deed to D., and this notwithstanding the consideration therefor was only nominal. P. 44

### ON MOTION FOR REHEARING.

2. Under a parol agreement to convey land, the payment of the full purchase price, without some further part performance, such as delivery of possession, the making of valuable improvements, etc., is not sufficient to vest an equitable title in the purchaser.                                          P. 48

Appeal from District Court, McKinley County; Raynolds, Judge.

Suit by Annie A. Jones against the Rocky Cliff Coal Mining Company and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

J. O. Seth, of Santa Fe, for appellant.

E. A. Martin, of Gallup, and McFie & Edwards, of Santa Fe and Gallup, for appellee.

### STATEMENT OF THE CASE.

This is a suit to quiet title in statutory form brought by Annie A. Jones, appellee, against the appellant, Rocky Cliff Coal Mining Company, and others. The defendants with the exception of appellant made default. Appellant answered denying title in appellee, asserting title in appellant, and praying that title be quieted in it. The case was tried to the court, a judgment entered quieting title to the property in the appellee (plaintiff), from which the appellant (defendant) appeals.

### STATEMENT OF THE FACTS.

On August 1, 1910, Elmer and Ellen Wilson, his wife, were the owners of lots 17 to 24, inclusive, of block 26, of the Railroad addition to the town of Gallup. On that day they executed a warranty deed for said premises in which the name of the grantee was left blank. The deed after execution was left with Sam Bushman, the attorney who prepared it, for two years, and then by him delivered to the defendant Stephen Canavan, who during all this time was president of the appellant, the Rocky Cliff Coal Mining Company, a corporation, which he apparently controlled. This deed was in the possession of Canavan unchanged until about two years prior to

the trial of this case in the district court in December, 1918.

Canavan, at the time the Wilsons executed the deed last mentioned, was indebted to the appellee, Annie A. Jones, in some sum of money, and he agreed with her to purchase for her the lots in question in consideration of the cancellation of this indebtedness. After the deed mentioned was obtained by Canavan, he showed it to the appellee, stating to her that it was her deed, and that he would keep it safely for her. Nothing was said between them as to the name of the grantee not appearing therein. The appellee paid the taxes on the property from the time the deed was made until the trial of the case. It does not appear that either the appellant or appellee ever went into actual possession of the property.

In the year of 1915 there was some disagreement or difficulty between the appellee and Canavan in El Paso, at which time some threats were made, from which appellee inferred that Canavan intended to deprive her of the property, and upon the advice of counsel appellee secured from Wilson and wife, the grantors in the original deed, a quitclaim deed to the same property for the nominal consideration of $1. At the time this quitclaim deed was executed and delivered to appellee (on July 11, 1916), the original deed mentioned was still in the possession of Canavan unchanged, with no grantee named therein. Thereafter Canavan requested Bushman, who had written the original deed, to write the name of the appellant, the Rocky Cliff Coal Mining Company, therein as grantee, which Bushman did. This occurred late in 1916, and was filed for record in September, 1917.

Canavan testified that the property was purchased for the appellant, the Rocky Cliff Coal Mining Company, paid for with its money by check upon its bank account for $300, drawn by him, and the grantee's name left blank on account of financial

troubles of himself and the corporation. This testimony is corroborated in a vague sort of way by the attorney Bushman, who wrote the deed. He testified in substance that he wrote the deed and that the deed was executed in his office and he saw it executed and delivered to Canavan by Mrs. Wilson; that his recollection was that $300 consideration was paid, and "as near as I remember a check was given by Canavan, and I think it was the Rocky Cliff's check, signed by him, given to Mrs. Wilson"; that the name of the grantee was left blank at the direction of Canavan; that he could only state his impression from the conversation who was the actual grantee. "I gathered the impression at the time from the conversation that occurred that Mr. Canavan was buying for the Rocky Cliff Coal Company."

Upon cross-examination the following testimony was elicited by attorney for appellant from appellee:

"Q. Don't you know whether or not you gave anything for this quitclaim deed, plaintiff's Exhibit G? A. I think she said to me you have already paid for this, but to make it legal pay the dollar, and it is good, for it is already paid for.

"Q. Who said that? A. My lawyer.

"Q. Mrs. Pearce? A. Yes, or words to that effect.

"Q. You don't know whether she gave the dollar for it or not? A. I suppose she did; I don't know.

"Q. You didn't talk to Mrs. Wilson about it when you got that deed? A. I talked to her about making it for me. Would she be willing to do that. While it was not necessary —Mr. Canavan hadn't given me the deed.

"Q. Did she say she would give it to you? A. She said yes, she knew it had been bought for me.

"Q. Did she ask you to pay her any thing for it? A. No, she didn't ask me. She said it had been paid for. I cannot remember what she did say about it. I know she said that much."

OPINION OF THE COURT.

BRICE, District Judge (after stating the facts as above). [1] Many assignments of error are advanced in this court, but it will be unnecessary to consider them separately. If there was error in the

admission of testimony, it was harmless, as will be seen from the view we take of the case.

At the time the quitclaim deed was made to appellee, the title was in the grantors named in that deed, for until some name was inserted as grantee in the original deed it was ineffective as a conveyance.

"The deed in blank passed no interest, for it had no grantee. The blank intended for the name of the grantee was never filled, and until filled the deed had no operation as a conveyance. * * * There are two conditions essential to make a deed thus executed in blank operate as a conveyance of the property described in it; the blank must be filled by the party authorized to fill it, and this must be done before or at the time of the delivery of the deed to the grantee named." Allen v. Withrow, 110 U. S. 128, 3 Sup. Ct. 523, 28 L. Ed. 90.

Even though the deed was delivered to the corporation, and it had implied authority to fill in its name as grantee, following the rule of some courts (1 Dev. on Real Estate [3d Ed.] § 457), there is no evidence from which the court could infer the corporation authorized its name to be inserted as grantee in the deed. But assuming that the corporation did authorize Canavan to authorize Bushman to fill in its name as grantee in the deed, at the time this was done the appellee had obtained title through the quitclaim deed from the Wilsons. Mabie-Lowrey Hdwre. Co. v. Ross et al. (26 N .M. 51), 189 Pac. 42. The consideration of $1 given for the quitclaim deed is sufficient consideration to pass title, unless it was made in bad faith. 2 Dev. on Real Estate (3d Ed.) §§ 813, 814. Whether or not a purely nominal consideration is a sufficient protection of a bona fide purchaser against a holder of an unrecorded deed is not necessary to determine (Ten Eyck v. Witbeck, 135 N. Y. 40, 31 N. E. 994, 31 Am. St. Rep. 809) ; for it is our conclusion that, at least until the grantee's name had been inserted in the original deed, the title remained in the Wilsons, for the deed was ineffective until some grantee was named

therein. Allen v. Withrow, supra.; Board of Education v. Hughes, 118 Minn. 404, 136 N. W. 1095, 41 L. R. A. (N. S.) 637.

The deed under which appellant claims being ineffective as a conveyance at the time of the execution and delivery of the deed to appellee, and she having no knowldge of any interests of the appellant in the property, the quitclaim deed conveyed a good title.

Courts have long disagreed over the construction of deeds executed without a grantee being named therein. Some hold that such a deed is absolutely void; others that an agent duly authorized in writing only could fill in the name of the grantee; others that parol authority could be given, but the grantee's name must be written in before delivery; others that such parol authority could be exercised after delivery; others that the delivery of such a deed would carry with it implied authority for the intended grantee to fill in his own name as grantee at any time. The most extreme cases are to the effect that when such deed is duly executed and delivered to the intended grantee, who long thereafter held the property in actual, open, adverse possession, that such possession coupled with the deed was effective in passing title, although the name of grantee was never supplied.

The following authorities contain the several views of the courts on the subject: Barden et al. v. Grace et al., 167 Ala. 453, 52 South. 425, Ann. Cas. 1912A, 537 and note at page 538; Allen v. Withrow, 110 U. S. 128, 3 Sup. Ct. 517, 28 L. Ed. 90; Montgomery v. Dresher, 90 Neb. 632, 134 N. W. 251, 38 L. R. A. (N. S.) 423 and note; Guthrie v. Field, 85 Kan. 58, 116 Pac. 217, 37 L. R. A. (N. S.) 326; McGrew v. Lamb, 60 Colo. 463, 154 Pac. 91; U. S. v. Lumber & Mfg. Co. (D. C.) 198 Fed. 893; Reed v. Reed, 98 Miss. 354, 53 So. 691, Ann. Cas. 1913A, 1194; Lafferty v. Lafferty, 42 W. Va. 789, 26 S. E. 264; Cribben v. Deal, 21 Or. 215, 27 Pac. 1047, 28 Am. St. Rep. 749; Sayles v. Queirolo, 71 Misc. Rep.

Jones v. Rocky Cliff C. M. Co., 27 N. M. 41.

566, 130 N. Y. Supp. 806; 3 Washburn on Real Property (6th Ed.) § 2091; 2 Tiffany on Real Property, § 434 (p. 1597), also section 461 (p. 1745); Board of Education v. Hughes, 118 Minn. 404, 136 N. W. 1095, 41 L. R. A. (N. S.) 637; Vanderbilt v. Vanderbilt, 54 How. Prac. 250; 1 Devlin on Real Estate (3d Ed.) § 457; Osby v. Reynolds, 260 Ill. 576, 103 N. E. 556, Ann. Cas. 1914D, 387, and note at page 390; Threadgill v. Butler, 60 Tex. 599; 8 R. C. L. p. 956.

We do not find it necessary to pass upon this question, as the deed under which appellant claims contained the name of no grantee, nor was he ever in possession of the property so far as the record shows, at the time of the execution, delivery, and recording of the quitclaim deed to appellee; and this falls short of coming within any of the rules of construction we have found.

It follows that the judgment of the district court ought to be and is affirmed, and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

### ON MOTION FOR REHEARING.

BRICE, District Judge. The appellant has filed a motion for rehearing, in which it is claimed that at the time the quitclaim deed was made to appellee the appellant had the equitable title to the property in controversy, which equitable title was created by or resulted from appellant's paying the Wilsons the purchase price for said premises, together with the fact of the execution of the deed by the Wilsons with the name of the grantee blank and its delivery to appellant.

Assuming that the quitclaim deed, bearing a nominal consideration, was not effective as against a prior equitable title (which question it is unnecessary to decide), then, if appellant was possessed of such equitable title at the time of the execution and delivery of the quitclaim deed by appellee, it would

appear that appellant's motion for a rehearing should be sustained.

[2]    Under a parol agreement to convey land, the payment of the full purchase price without some further part performance, such as delivery of possession, the making of valuable improvements, etc., is not sufficient to vest an equitable title in the purchaser, Ward v. Stuart, 62 Tex. 333; Grindling v. Rehyl, etc., 149 Mich. 641, 113 N. W. 290, 15 L. R. A. (N. S.) 466; 5 Pomeroy, Equity Jurisprudence; § 2246; Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383; Note to Houston v. Townsend, 12 Am. Dec. 120; Osborne v. Osborne, 24 N. M. 96, 172 Pac. 1039; Scheuer v. Cochem, 126 Wis. 209, 105 N. W. 573, 4 L. R. A. (N. S.) 427; 25 R. C. L. 68.

If an equitable title was vested in appellant, it must necessarily have resulted, either from the execution and delivery of the deed with the grantor's name left blank, or else on account of the payment of the purchase money, together with the execution and delivery of such deed. We are assuming, for the sake of argument, that such payment was made by appellant, and that the deed in question was delivered to it with authority, express or implied, to fill in its name as grantee, and, acting under such authority, it authorized Bushman to fill in its name. That there is authority for the contention of the appellant is found in decisions of the Texas courts:

"Here it clearly appears that the purchase money was paid to McDonough, and that the sale and conveyance was, in every respect, complete, save that the name of the grantee was not inserted in the deed. It also appears that it was intended by the parties that the title should vest in Latham at once, and he was expressly authorized by McDonough, at the time the deed was delivered, to insert his own, or any other, name in the deed as grantee. This was a power coupled with an interest vested by McDonough in Latham for the benefit of the latter, and is therefore irrevocable." Threadgill v. Butler, 60 Tex. 601.

And this case was followed by the Court of Civil Appeals of Texas in the case of Schleicher v. Runge et al., 37 S. W. 982, and Fennimore v. Ingham, 181 S. W. 513.

In the Threadgill Case, just quoted from, Latham, after a sale of the property to Butler, wrote his name in as grantee in a deed from McDonough to Latham. In that suit by the heirs of McDonough against Butler, which was brought after the deed had been properly corrected, it was held that Latham still had power to perfect the instrument by inserting his name as grantee. This case would not be authority in the case at bar because the quitclaim deed to the appellee had been executed before the insertion of the appellant's name as grantee.

The case of Schleicher et al. v. Runge et al. (Tex. Civ. App.) 37 S. W. 982, would seem to support appellant's contention, for it is held that, notwithstanding the name of the grantee was never filled in during his lifetime, his heirs were entitled to recover the land from the heirs of the grantor; and the same conclusion was reached by the Court of Civil Appeals of Texas in the case of Fennimore v. Ingham, supra. If the conclusion of the Texas Court of Civil Appeals is correct, then our original opinion is not the law. In the early days of Texas, it became a custom to transfer real property by the execution and delivery of deeds with the grantee's name in blank, with authority to write in the name of the grantee or any other name as grantee in such conveyance, and title was passed by delivery of the deed until some purchaser inserted his own name therein. It is believed that this custom affected land titles to such a degree that Texas courts took this into consideration in adopting this rule (Schleicher v. Runge, 37 S. W. 982) ; but we are unable to assent to the doctrine laid down in these decisions.

If the deed in question conveyed any title, it was a legal title. We have held such deed to be void, at

least until the intended grantee's name was supplied. Iɪ void, then such deed was ineffective as a conveyance; a nullity. If a nullity, title to the property was not affected by its execution and delivery. We cannot see how efficacy could be given to it by reason of the fact (if it be a fact) that appellant had paid the purchase money. The payment of the purchase money was ineffective to transfer the equitable title, and the void deed did not add to its efficacy. 2 Tiffany on Real Property (2d Ed.) § 461, p. 1145; also section 434, p. 1597; 25 R. C. L. 655; Grafton v. Cummings, 99 U. S. 100, 25 L. Ed. 366.

Our conclusion is that no equitable title was vested in appellant at the time of the execution and delivery of the quitclaim deed to appellee, for which reason the motion for rehearing should be, and is, denied.

ROBERTS, C. J., and PARKER, J., concur.